# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF GEORGIA
## MACON DIVISION

| | |
|---|---|
| **POLYWAD, INC.,** | |
| *Plaintiff,* | |
| **v.** | **CIVIL ACTION NO.** <br> **5:23-cv-00512-TES** |
| **ABLE'S SPORTING, INC.,** *et al.,* | |
| *Defendants.* | |

## ORDER

Before the Court is Defendant SafeSide Tactical LLC's ("SafeSide") Motion to

Dismiss [Doc. 12] for lack of personal jurisdiction pursuant to Federal Rule of Civil

Procedure 12(b)(2).[1] SafeSide asks the Court to dismiss Plaintiff Polywad, Inc.'s

("Polywad") Complaint, or in the alternative, transfer the case to the Western District

of Virginia, where SafeSide is headquartered and operates its two retail locations.

[Doc. 12, pp. 1, 3]. Alongside its Motion to Dismiss, SafeSide produced an affidavit by

---

[1] After SafeSide filed its Motion, Plaintiff filed an Amended Complaint [Doc. 78]. However, because SafeSide filed its Rule 12(b) Motion to Dismiss [Doc. 12] more than 21 days before Plaintiff filed its Amended Complaint, the Original Complaint remains operative for purposes of ruling on SafeSide's Motion to Dismiss. *See Ferreyros v. Cox Operating LLC*, No. 1:24-00021-KD-C, 2014 WL 1241961, at *2 n.2 (S.D. Ala. Mar. 22, 2024) ("In cases involving multiple defendants, a plaintiff may file an amended complaint as of right concerning only those defendants who, at the time the plaintiff files his amendment, have not yet filed an answer or a Rule 12(b), (e), or (f) motion . . . .) (quoting *Villery v. D.C.*, 277 F.R.D. 218, 219 (D.D.C. 2011)); *see Villery*, 277 F.R.D. at 219 ("[T]he plaintiff may not file his amendment as a matter of right concerning those defendants who filed an answer or a Rule 12(b), (e), or (f) motion more than 21 days before the plaintiff attempts to make such a filing."). The Court will refer to the Original Complaint as "the Complaint" for purposes of this Order.

its principal and owner, Mitchell Tyler, ("Tyler's First Affidavit") [Doc. 12-1]. In

Response, Plaintiff submitted three exhibits purporting to establish SafeSide's

contacts with Georgia. [Doc. 53-1]; [Doc. 53-2]; [Doc. 53-3]; *see* [Doc. 53, p. 8]. SafeSide

replied, attaching a second affidavit by Tyler ("Tyler's Second Affidavit") [Doc. 71-1].

Because Plaintiff has not met its burden of pleading facts to support jurisdiction or

submitting evidence to support jurisdiction after SafeSide's jurisdictional challenge,

the Court **DISMISSES** Plaintiff's claims against Defendant SafeSide **without**

**prejudice** pursuant to Rule 12(b)(2).

## BACKGROUND

Polywad, a Georgia corporation that designs ammunition and consults with

ammunition manufacturing companies, has sold and marketed products bearing its

federally registered trademark, Quik-Shok®, since 1997. [Doc. 1, ¶¶ 4, 52–54].

SafeSide is a Virginia-based manufacturer of firearms, ammunition, and other firearm

products, with two physical retail locations in Virginia. [Doc. 12-1, Tyler Decl., ¶ 3].

Plaintiff's cause of action, however, arises out of SafeSide allegedly selling a product

called the "CCI 221r Quik Shok 32gr 50/5000" (the "CCI Product") on its website. *See*

[Doc. 1, ¶ 76]. Plaintiff's Complaint does not allege that the website was accessible in

Georgia but instead merely lists the websites, including SafeSide's, on which the

trademark allegedly (and illegally) appeared. *See* [*id*. at ¶¶ 49, 59, 76]. In Plaintiff's

Response to SafeSide's Motion to Dismiss, Plaintiff cites these paragraphs of its

Complaint to assert that SafeSide's "interactive website was accessible to and directed at consumers in Georgia." [Doc. 53, p. 6]. Plaintiff also alleged that "Defendants" (SafeSide included) "regularly conduct business" within Georgia and that "Defendants have committed torts in or directed at entities within Georgia." [Doc. 1, ¶ 49].

In rebuttal to the allegations in Plaintiff's Complaint, Tyler testified in his First Affidavit that SafeSide has only sold one $35 order of the allegedly infringing CCI Product, which was to a consumer in North Carolina. [Doc. 12-1, Tyler Decl., ¶ 8]. Out of 5,300 total online orders, only two (for a total of $75) went to customers in Georgia—neither of which were for the CCI Product at issue. [*Id*. at ¶ 12]. In Response to SafeSide's Motion to Dismiss, Plaintiff submitted three exhibits. *See* [Doc. 53, p. 8]. First, Plaintiff attached a screenshot of a Facebook post showing that SafeSide attended a trade show in Savannah, Georgia, on February 12, 2024.[2] [Doc. 53-1]. In response, Plaintiff countered that AmChar Wholesale, Inc., ("AmChar") organized the trade show and simultaneously asserted that AmChar is a Georgia-

---

[2] Plaintiff filed suit almost three months prior, on December 22, 2023. *See* [Doc. 1, p. 27].

based company.[3] [Doc. 53, p. 5]. Plaintiff also asserted that by attending the trade show, SafeSide must have "registered" and "paid for" the trade show, therefore "transact[ing]" with a Georgia company. [*Id*. at p. 13]. Again, Plaintiff offered no evidence that shows payment to AmChar, however, and Tyler testified that SafeSide was not a vendor at the trade show and did not sell anything there. [Doc. 71-1, Tyler Decl., ¶ 3].

Second, Plaintiff attached a screenshot of a webpage from AmChar's website that lists SafeSide as one of AmChar's dealers. [Doc. 53-2]. However, nothing in that attached exhibit indicates that AmChar is a Georgia company. *See* [Doc. 53-2]. Third and finally, Plaintiff attached what appears to be public documentation that a company called "CCI" also registered for the trade show. *See* [Doc. 53-2]. Again without supporting evidence, Plaintiff's Response contends that CCI is the manufacturer of the infringing ammunition. [Doc. 53, p. 8]. And as SafeSide points out, there is no allegation—let alone supporting evidence—that SafeSide has a contractual relationship with or even spoke to CCI at the trade show. *See* [Doc. 71, pp.

---

[3] Tyler testified that to the best of his knowledge, AmChar is a distributor based in New York. [Doc. 71-1, Tyler Decl., ¶ 4]. However, although Plaintiff submits no supporting evidence for its contention that AmChar is a Georgia-based company, Plaintiff did link AmChar's website in a footnote in the body of its Response to SafeSide's Motion. *See* [Doc. 53, p. 8 n.2]. The webpage—which contains a window for the annual trade show in Savannah, Georgia—lists both a New York and Georgia address for the company. *AmChar Wholesale, Inc.*, https://www.amchar.com/amchar-dealer-trade-expo-2024 (last visited Apr. 19, 2024). However, a hyperlink to a public website where evidence *can* be found is not a substitute for filing evidence in support of an assertion. *See* CM/ECF Administrative Procedures, Hyperlinks, p. 10, https://www.gamd.uscourts.gov/cmecf (last visited Apr. 19, 2024) ("Neither a hyperlink, nor any site to which it refers, shall be considered part of the record. Hyperlinks are simply a convenient mechanism for accessing material cited in a filed document.").

5]; [Doc. 71-1, Tyler Decl., ¶ 8].

## LEGAL STANDARD

A Rule 12(b)(2) motion to dismiss attacks the district court's ability to assert jurisdiction over the defendant's person. Fed. R. Civ. P. 12(b)(2). It is essential for the Court to make this determination before it can do anything in this case. *Posner v. Essex Ins. Co.*, 178 F.3d 1209, 1214 n. 6 (11th Cir.1999) ("A court without personal jurisdiction is powerless to take further action.").

"A plaintiff seeking the exercise of personal jurisdiction over a nonresident defendant bears the initial burden of alleging in the complaint sufficient facts to make out a prima facie case of jurisdiction." *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009). At first, the Court must accept those allegations as true. *See Consol. Dev. Corp. v. Sherritt, Inc.*, 216 F.3d 1286, 1291 (11th Cir. 2000). But if the defendant refutes personal jurisdiction by—as here—submitting affidavit evidence in support of its position, the burden shifts back to the plaintiff to substantiate its jurisdictional allegations through affidavits, testimony, or other evidence of its own. *Future Tech. Today, Inc. v. OSF Healthcare Sys.*, 218 F.3d 1247, 1249 (11th Cir. 2000).

To determine whether personal jurisdiction exists over an out-of-state defendant, courts undertake a two-step analysis. *United Techs. Corp.*, 556 F.3d at 1274. First, a court must determine whether the exercise of jurisdiction is appropriate under the state long-arm statute. *Future Tech. Today*, 218 F.3d at 1249; *see also Stubbs v.*

*Wyndham Nassau Resort & Crystal Palace Casino*, 447 F.3d 1357, 1361 (11th Cir. 2006).

Georgia's long-arm statute, O.C.G.A. § 9-10-91, provides six avenues for courts to

exercise jurisdiction over nonresidents, two of which are relevant for purposes of this

Order.

"A court of this state may exercise personal jurisdiction over any nonresident .

. . as to a cause of action arising from any of the acts . . . enumerated in this Code

section" if the defendant "[t]ransacts any business within this state." O.C.G.A. § 9-10-

91(1). A court could also exercise jurisdiction if the defendant "[c]ommits a tortious

injury in this state caused by an act or omission outside this state *if* the tort-feasor

regularly does or solicits business, or engages in any other persistent course of

conduct, or derives substantial revenue from goods used or consumed or services

rendered in this state." O.C.G.A. § 9-10-91(3).

But the story doesn't end there. Even if the state long-arm statute is satisfied,

courts must then consider "whether the exercise of jurisdiction over the defendant

would violate the Due Process Clause of the Fourteenth Amendment to the United

States Constitution." *Melgarejo v. Pycsa Panama, S.A.*, 537 F. App'x 852, 858–59 (11th

Cir. 2013). Under the federal standard, "due process requires only that in order to

subject a defendant to a judgment in personam, if he be not present within the

territory of the forum, he have certain minimum contacts with it such that the

maintenance of the suit does not offend traditional notions of fair play and

substantial justice." *Int'l Shoe Co. v. State of Wash., Off. of Unemployment Comp. & Placement*, 326 U.S. 310, 316 (1945) (internal quotations omitted). In other words, and for all intents and purposes here, (1) the plaintiff must do something to target the forum state or its residents, and (2) the exercise of jurisdiction must be fair. *Licciardello v. Lovelady*, 544 F.3d 1280 (11th Cir. 2008) (citing *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774 (1983)).

"District courts in Georgia should take care not to conflate these two inquires because Georgia's long-arm statute does not provide jurisdiction that is coextensive with due process." *Empirical Regent, LLC v. Sunny Design & Bus. Consulting, LLC*, No. 1:19-CV-3253-MHC, 2020 WL 4557564, at *4 (N.D. Ga. Feb. 25, 2020) (citing *Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.*, 593 F.3d 1249, 1259 (11th Cir. 2010)). In other words, these are two separate inquiries—both of which must be met to establish personal jurisdiction. *Id*.

## DISCUSSION

### 1. Georgia's Long-Arm Statute

Again, Georgia's long-arm statute reaches only those nonresidents whose conduct brings them under at least one of the six prongs of O.C.G.A. § 9-10-91. *Diamond Crystal*, 593 F.3d at 1259. Plaintiff contends that jurisdiction is proper over Defendant SafeSide because SafeSide (1) transacted business in Georgia and (2) committed a tortious injury in Georgia caused by an act outside Georgia *and* SafeSide

regularly does or solicits business in Georgia. [Doc. 53, pp. 11, 13]. The Court disagrees.

### A.  O.C.G.A. § 9-10-91(1)

The first prong of the Georgia long-arm statute provides that a court in Georgia may exercise jurisdiction over a defendant if the defendant "transacts any business within this state." O.C.G.A. § 9-10-91(1). The Eleventh Circuit has instructed that courts ought to interpret this requirement "literally." *Diamond Crystal*, 593 F.3d at 1259. Accordingly, "subsection (1) long-arm jurisdiction in Georgia expressly depends on the actual transaction of business—the doing of some act or consummation of some transaction—by the defendant in the state." *Id*. Georgia courts apply a three-part test to determine if jurisdiction is proper over a nonresident based on the transaction of business:

> Jurisdiction exists on the basis of transacting business in this state if [1] the nonresident defendant has purposefully done some act or consummated some transaction in this state, [2] if the cause of action arises from or is connected with such act or transaction, and [3] if the exercise of jurisdiction by the courts of this state does not offend traditional fairness and substantial justice.

*Robertson v. CRI, Inc.*, 601 S.E.2d 163, 166 (Ga. Ct. App. 2004).

Plaintiff's first factual basis for jurisdiction under this prong is that "SafeSide does not dispute that it offered, sold, and shipped products to consumers in Georgia." [Doc. 53, p. 13]. However, SafeSide admitted only that it sold two out of

5,300 orders (less than .04% of its total orders) to residents of Georgia—neither of which were for the CCI Product at issue. [Doc. 12-1, Tyler Decl., ¶ 12]. Although either sale to a Georgia resident certainly qualifies as a business transaction, Plaintiff offers no evidence nor even an allegation that the cause of action arises from or is in any way related to those sales. *See Robertson*, 601 S.E.2d at 166. Thus, the two sales and shipments to Georgia residents are insufficient to support the exercise of jurisdiction under O.C.G.A. § 9-10-91. *See id*.

Further, Plaintiff seems to assert that SafeSide "offer[ing]" products to consumers in Georgia supports personal jurisdiction. [Doc. 53, p. 13]. Insofar as Plaintiff is arguing that the presence of its trademark on SafeSide's website (which is accessible to Georgia consumers), this argument fails. *See* [Doc. 53, p. 6]. "[I]n a trademark infringement case, a plaintiff's allegation 'that a defendant has wrongfully used the plaintiff's mark on defendant's website to solicit business' has been held insufficient to form the basis of jurisdiction under subsection (1) without evidence of service or interaction within the state." *Gulfstream Aerospace Corp. v. Gulfstream Air Charter, Inc.*, No. 4:17-CV-26, 2017 WL 6069006, at *5 (S.D. Ga. Nov. 20, 2018) (citing *FisherBroyles, LLP v. Juris Law Grp.*, No. 1:14-CV-1101-WSD, 2015 WL 630436, at *5 (N.D. Ga. Feb. 12, 2015)). So, Plaintiff cannot establish personal jurisdiction on the idea that SafeSide's website—even if it offered the allegedly infringing product for sale—was merely accessible in Georgia. *See CPAP Life, LLC v. Zopec Med. LLC*, No.

1:21-CV-2103-MHC, 2021 WL 6751986, at *4 (N.D. Ga. Dec. 6, 2021).

Plaintiff's next factual basis for jurisdiction under the "transacts any business" prong is that SafeSide attended an ammunition trade show in Georgia that was organized by AmChar Wholesale, which Plaintiff claims is a Georgia-based company. [Doc. 53, p. 13]. Because SafeSide filed a Motion to Dismiss and supported its arguments with affidavits, the burden shifted back to Plaintiff to produce actual, admissible evidence supporting jurisdiction. *See Future Tech. Today*, 218 F.3d at 1249. Plaintiff's evidence consists of (1) SafeSide's Facebook post showing its attendance at the trade show; (2) AmChar's webpage listing SafeSide as one of their dealers; and (3) a form showing that a company called CCI also attended the trade show. *See* [Doc. 53, p. 8].   [Doc. 53-1]; [Doc. 53-2]; [Doc. 53-2].

However, first, even assuming SafeSide registering for the trade show involved paying money to AmChar,[4] several problems remain. First, Plaintiff has submitted no evidence that AmChar is a Georgia-based company, and SafeSide contends that to the best of Tyler's knowledge, it is a New York distributor. [Doc. 71-1, Tyler Decl., ¶ 5]. Second, Plaintiff's only basis for connecting SafeSide's attendance at the trade show to the allegedly infringing product is that the manufacturer of the

---

[4] Plaintiff did not submit any evidence of that SafeSide paid money to AmChar, and SafeSide submitted evidence that it was not a vendor at the trade show and did not sell anything there. [Doc. 71-1, Tyler Decl., ¶ 3].

infringing product, CCI Ammunition, also attended the trade show. *See* [Doc. 53, pp. 8, 13]; [Doc. 53-3]. But Plaintiff submitted no evidence to show any transaction—or any interaction at all—between CCI Ammunition and SafeSide. *See generally* [Doc. 1]; [Doc. 53]; [Doc. 53-3]. And SafeSide presented evidence that it has no formal or contractual relationship with CCI. [Doc. 71-1, Tyler Decl., ¶ 8]. Perhaps most fatal, Plaintiff never attempted to explain how attending a trade show *after its filing* of the Complaint gave rise to personal jurisdiction at the time the Complaint was actually filed.[5] Plaintiff has not met its burden in showing that SafeSide's attendance at the trade show in Georgia involved any transaction at all—let alone one connected to the allegedly infringing product. *See Robertson*, 601 S.E.2d at 166.

Plaintiff's third and final factual basis for jurisdiction under § 9-10-91(1) is that SafeSide is a licensed dealer for AmChar, which, again, Plaintiff claims is "located in Georgia." [Doc. 53, p. 13]. However, Plaintiff submits no evidence to support its assertion that AmChar is located in Georgia. Although its second exhibit is a webpage showing that AmChar does indeed list SafeSide as one of its dealers, nowhere in the exhibit does it show that AmChar is headquartered, incorporated, or even has some other kind of location in Georgia. *See* [Doc. 53-2]. Because of the lack of

---

[5] As SafeSide points out, the majority of federal courts that have addressed this issue have determined that "post-filing contacts should not be considered" when assessing personal jurisdiction. *United Parcel Serv., Inc. v. Eclipse IP LLC*, No. 1:11-CV-2138-CAP, 2012 WL 13008802, at *2 (N.D. Ga. July 3, 2012*)* (listing circuit court cases); [Doc. 71, p. 4 n.2]. The Court agrees with the Northern District of Georgia and the various circuit courts that have addressed the issue. However, even considering the trade show evidence, the Court sees no basis for jurisdiction under the long-arm statute.

connection between SafeSide's sparse business transactions in Georgia and the cause of action, Plaintiff cannot establish personal jurisdiction under § 9-10-91. *See Robertson*, 601 S.E.2d at 166.

**B.  O.C.G.A. § 9-10-91(3)**

Georgia's long-arm statute also allows for a court to exercise personal jurisdiction over a nonresident defendant who "[c]ommits a tortious injury in this state caused by an act or omission outside this state *if* the tort-feasor regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state." O.C.G.A. § 9-10-91(3) (emphasis added). Plaintiff appears to assert that the relevant act outside of Georgia is the use of its Quik-Shok® trademark on the CCI Product that SafeSide was selling on its website. *See* [Doc. 53, pp. 6, 14]. The harm, according to Plaintiff, occurs in its home state of Georgia. [*Id*. at p. 14]. Thus, there is a tortious injury caused by an act outside the state. *See* O.C.G.A. § 9-10-91(3). However, even granting Plaintiff that particular prong, Plaintiff fails to satisfy the second element of § 9-10-91(3)—that SafeSide conducts regular business in, engages in a persistent course of conduct in, or derives substantial revenue from Georgia.

   i.     *Tortious Injury in the State*

Citing to various tort cases (but no trademark cases) from the Georgia Court of Appeals, the Northern District of Georgia determined that for purposes of the

Georgia long-arm statute, the relevant harm is the likelihood of confusion among consumers—not the Plaintiff's economic loss in the forum.[6] *Empirical Regent*, 2020 WL 4557564, at *8. In other words, according to the Northern District, Plaintiff's Complaint would need to adequately plead that SafeSide's use of Plaintiff's trademark was likely to confuse *Georgia* consumers. *See id*. Although Plaintiff's Complaint—in conclusive fashion—asserts that "Defendants have committed torts in or directed at entities within Georgia," it asserts no factual allegations about Georgia consumers.[7] *See* [Doc. 1, ¶ 49]. Further, after SafeSide submitted its Motion to Dismiss, Plaintiff did not submit any evidence of consumer confusion in Georgia or any sales to Georgia residents. *See generally* [Doc. 53].

However, in all fairness to Plaintiff, the Court is not fully convinced that the Georgia Court of Appeals case that the Northern District relied upon—which involved a situation in which a plaintiff received a medical injury in another state but sought medical treatment (and therefore suffered economic loss) in Georgia—equally applies to trademark cases. *See Gee v. Reingold*, 259 Ga. App. 894, 897 (2003)). Certainly, the Court agrees that "[a] tort occurs when and where the actual injury or

---

[6] This is in contrast to the federal standard, in which the harm in a trademark case (for purposes of the Due Process Clause) occurs to the trademark holder in the trademark holder's place of residence. *See Licciardello v. Lovelady*, 544 F.3d 1280, 1287 (11th Cir. 2008) (holding that a nonresident's intentional use of a resident's trademark was "expressly aimed at a specific individual in the forum whose effects were suffered in the forum," satisfying the minimum contacts prong of the federal standard).

[7] Plaintiff does assert that the use of its trademark is "likely to cause confusion," but there is no allegation about Georgia consumers in particular. *See* [Doc. 1, ¶ 87].

accident takes place, and not at the place of the economic consequences of that injury." *Id*. But the harm in a trademark case is different: The harm a trademark holder suffers in his home state is not the same as a plaintiff suffering harm in one state but bringing the lingering consequences of the injury to the forum state, as in a medical injury case.

The Court thinks it plausible that a Georgia-resident plaintiff suffering harm to his brand in Georgia constitutes "a tortious injury in this state caused by an act or omission outside this state." *See* O.C.G.A. § 9-10-91(3). However, the Court doesn't have to untangle that particular issue today because Plaintiff must not only allege a tortious injury caused by an act outside Georgia; it must also establish that SafeSide regularly does business in, engages in a persistent course of conduct in, or derives substantial revenue from Georgia. *See id*. And that, Plaintiff has failed to do.

ii.    *Regularly Conducts Business, Engages in Persistent Conduct, or Derives Substantial Revenue in Georgia*

Plaintiff's Complaint contains very few factual allegations to support the second prong—the only relevant allegations being that "*Defendants* have and continue to supply their products and services to customers and partners in Georgia" and "regularly conduct business" in Georgia. [Doc. 1, ¶¶ 49–50 (emphasis added)]. In rebuttal to the Plaintiff's assertion of jurisdiction, Defendants responded with Tyler's First Affidavit, in which Tyler testified that SafeSide has only fulfilled two orders to

customers in Georgia, totaling a paltry $75. [Doc. 12-1, Tyler Decl., ¶ 12].

In Response, Plaintiff first contends that "SafeSide admits that its products were marketed and sold to Georgia consumers and then shipped to consumers in Georgia." [Doc. 53, p. 14]. Technically, that's true. Certainly, SafeSide admits that it sold two unrelated products to Georgia residents totaling $75. [Doc. 12-1, Tyler Decl., ¶ 12]. But two sales hardly constitute "regular business," and $75 hardly constitutes "substantial revenue." *See* [*id.*]; O.C.G.A. § 9-10-91(3). And moreover, SafeSide stated that it "has never directed any marketing to . . . the state of Georgia," and Plaintiff submitted no evidence rebutting this contention. [Doc. 12-1, Tyler Decl., ¶ 9]. To be sure, Plaintiff asserts (and substantiates) that SafeSide is a dealer for AmChar Wholesale, but despite Plaintiff's contention that AmChar is a Georgia-based company, Plaintiff submitted no evidence to support that contention, and SafeSide contests it. *See* [Doc. 53, p. 12]; [Doc. 53-2]. Plaintiff therefore fails to establish that SafeSide conducts regular business in or derives substantial revenue from residents of Georgia, and the exercise of jurisdiction on the basis of § 9-10-91(3) is improper.

2. **Federal Due Process**

As stated above, Georgia's long-arm statute is not coextensive with the federal standard. *Empirical Regent*, 2020 WL 4557564, at *4. In other words, Georgia does not permit the exercise of personal jurisdiction over non-Georgia residents to the full extent permitted by the United States Constitution. *See id*. Thus, although the Due

Process Clause may not prohibit jurisdiction over SafeSide,[8] Georgia law does. Had Plaintiff established jurisdiction under Georgia's long-arm statute, the Court would be obligated to conduct an independent, second analysis of the propriety of jurisdiction under the federal Due Process Clause. *See id.* However, because the Court found that Georgia's long-arm statute does not permit the exercise of personal jurisdiction, the Court sees no need to engage in a lengthy analysis on the federal standard.

## CONCLUSION

Accordingly, because Plaintiff has failed to meet its burden in establishing a basis for exercising personal jurisdiction over Defendant SafeSide, the Court **GRANTS** SafeSide's Motion [Doc. 12] and **DISMISSES** Plaintiff's claims against Defendant SafeSide **without prejudice** for lack of personal jurisdiction. Accordingly, the Court directs the Clerk to **TERMINATE** SafeSide as a party to this action.

**SO ORDERED**, this 23rd day of April, 2024.

S/ Tilman E. Self, III
_____

**TILMAN E. SELF, III, JUDGE**
**UNITED STATES DISTRICT COURT**

---

[8] The Eleventh Circuit has held that for purposes of the Due Process Clause, a nonresident defendant's intentional use of the plaintiff's trademark constituted targeting of an individual in the forum state—thus satisfying the "minimum contacts" prong of the federal standard, as well as the fairness factors. *Lovelady*, 544 F.3d at 1284; *see Calder v. Jones*, 465 U.S. 783, 784 (1984) (affirming California's exercise of jurisdiction over nonresident defendants who published a libelous article about a California resident on the basis that she experienced the "brunt of the harm" in California); *see also Keeton*, 465 U.S. at 776–77 (affirming the exercise of jurisdiction over a nonresident defendant magazine who published a libelous magazine in the forum). Because Plaintiff's Complaint alleges that Defendants intended to deceive purchasers and Defendants do not rebut this point, Eleventh Circuit precedent seems to dictate that jurisdiction would be proper under the federal standard. *See Lovelady*, 544 F.3d at 1284.