# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF GEORGIA
# MACON DIVISION

| | |
|---|---|
| **POLYWAD, INC.,**<br><br>*Plaintiff,*<br><br>v.<br><br>**ABLE'S SPORTING, INC.,** *et al.,*<br><br>*Defendants.* | **CIVIL ACTION NO.**<br>**5:23-cv-00512-TES** |

## ORDER GRANTING GAMEMASTERS'S MOTION TO DISMISS
## FOR LACK OF PERSONAL JURISDICTION

Plaintiff Polywad, Inc. ("Polywad") filed suit, alleging trademark infringement, unfair competition, and false designation of origin against 20 Defendants.[1] Now, before the Court is Defendant GameMasters, Inc.'s Motion to Dismiss for lack of personal jurisdiction. [Doc. 87]. Several other Defendants ("Group 2 Defendants") moved to dismiss for lack of personal jurisdiction by way of a separate motion. [Doc. 86]. However, because the Court has determined that the facts supporting GameMasters's motion differ from those supporting Group 2's motion, the Court will rule on GameMasters's motion separately. For the foregoing reasons, the Court **GRANTS** GameMasters's Motion to Dismiss [Doc. 87] and **DISMISSES**

---

[1] Plaintiff filed its Original Complaint [Doc. 1] on December 22, 2023, but on April 5, 2024, Plaintiff filed an Amended Complaint [Doc. 78], the operative pleading for purposes of this Order. *See* [Doc. 81].

**without prejudice** the claims against it pursuant to Federal Rule of Civil Procedure 12(b)(2).

## BACKGROUND

Plaintiff Polywad is a Georgia corporation that designs ammunition and consults with ammunition manufacturing companies. [Doc. 1, ¶¶ 4, 52]. Run by its sole employee, Jay Menefee, Polywad has sold and marketed products bearing its federally registered trademark, "Quik-Shok," since 1997.[2] [*Id*. at ¶¶ 52–54]. Beginning in 2001, Plaintiff entered into an agreement ("CCI Agreement") with Cascade Cartridge, Inc. ("CCI"), allowing CCI to sell a product using Plaintiff's mark ("CCI Product" or the "Product"). [Doc. 78-2, p. 2]. Plaintiff and CCI, however, terminated their agreement in 2007—thus leaving CCI with no contractual right to use the "Quik-Shok" mark. [*Id*.].

Unbeknownst to Plaintiff, the Defendants, including GameMasters—who were in the business of selling hunting and/or shooting supplies—continued offering the CCI Product for sale on their websites using a picture of the Product with the old packaging containing the "Quik-Shok" mark.[3] *See* [Doc. 78, ¶¶ 60–81]. Polywad

---

[2] Polywad received its trademark registration in 1999. [Doc. 78, ¶ 54]. Since 1997, Polywad alleges that it has invested significant time and money into promoting its brand and building consumer goodwill. [*Id*. at ¶¶ 56–57].

[3] Plaintiff does not allege that any Defendant actually sold any physical CCI Product bearing the mark. Instead, Plaintiff alleges that they displayed the old packaging on their website where they offered the CCI Product for sale. *See* [*id*. at ¶¶ 62–81].

2

alleges that Menefee was diligent in protecting the mark and would, for example, "regularly check retail shops which sold ammunition for any infringing products." [*Id*. at ¶ 82]. Yet, for 16 years, Plaintiff had no idea about GameMasters's or any Defendant's allegedly infringing use. *See* [*id*. at ¶¶ 82–83]. This is because, Plaintiff alleges, its sole owner, Menefee, is in his seventies and "is not particularly 'computer-savvy.'" [*Id*. at ¶ 83]. Not until early June 2023 did Plaintiff search the internet for the "Quik-Shok" mark and discover Defendants' use. [*Id*.]. Shortly after the discovery, Plaintiff sent cease-and-desist letters to each Defendant. [*Id*. at ¶ 84]; [Doc. 78-2].

Although GameMasters is based in Missouri, Plaintiff asserts that this Court has personal jurisdiction over it because of its ties with Georgia. *See* [Doc. 78, ¶¶ 16, 49–50]. For example, without specifying which products (or distinguishing between Defendants), Plaintiff alleges that "*Defendants* have and continue to supply their products and services to partners in Georgia." [*Id*. at ¶ 50 (emphasis added)].

Alongside their Motion to Dismiss, GameMasters submitted an affidavit from the company's vice president, Trevor J. Beck, attempting to disprove Plaintiff's claim and establish that GameMasters has no ties to Georgia. [Doc. 87-2]. Specifically, according to Beck, GameMasters has never sold any of the CCI Products at issue to anyone, anywhere, including to residents or businesses located in the state of Georgia. [*Id*. at ¶¶ 4–5]. And in fact, GameMasters has never made *any sale* of *any product* to a Georgia consumer. [*Id*. at ¶ 3]. Indeed, GameMasters makes an

3

intentional effort to keep its business within Illinois, Iowa, and Missouri—restricting sales of all ammunition online to residents of those three states by requiring in-store pickup in Illinois only and requiring identification. *See* [*id*. at ¶ 9]. It has no property, offices, or employees in Georgia, and is not registered to do business here. [*Id*. at ¶ 8]. In Response to GameMasters's Motion,[4] Plaintiff attaches numerous exhibits (obtained as public information) showing that GameMasters buys and sells products for several firearm and ammunitions companies that are allegedly based in Georgia. *See* [Doc. 89, ¶ 6],[5] *in connection with* [Doc. 89-12].

## **LEGAL STANDARD**

"A plaintiff seeking the exercise of personal jurisdiction over a nonresident defendant bears the initial burden of alleging in the complaint sufficient facts to make out a prima facie case of jurisdiction." *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009). To establish a prima facie case, the plaintiff must "plead sufficient material facts" supporting jurisdictions—not mere legal conclusions. *Prentice v. Prentice Colour, Inc.*, 779 F. Supp. 578, 583 (M.D. Fla. 1991); *see United Techs. Corp.*, 556 F.3d at 1274.

If the plaintiff pleads sufficient material facts, the Court must, at first, accept

---

[4] Plaintiff responded to both 12(b)(2) motions to dismiss in a single Response, lumping GameMasters in with the others. *See generally* [Doc. 89].

[5] In Table 2 in its Response, Plaintiff provides an overview of its exhibits, listing which Defendants contract with which Georgia-based companies. [*Id*. at ¶ 6].

4

those allegations as true. *See Consol. Dev. Corp. v. Sherritt, Inc.*, 216 F.3d 1286, 1291 (11th Cir. 2000). But if the defendant refutes personal jurisdiction by—as here—submitting affidavit evidence in support of its position, the burden shifts back to the plaintiff to substantiate its jurisdictional allegations through affidavits, testimony, or other evidence of its own. *Future Tech. Today, Inc. v. OSF Healthcare Sys.*, 218 F.3d 1247, 1249 (11th Cir. 2000). "Where the plaintiff's complaint and supporting evidence conflict with the defendant's affidavits, the court must construe all reasonable inferences in favor of the plaintiff." *Meier ex rel. Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264, 1269 (11th Cir. 2002).

To determine whether personal jurisdiction exists over an out-of-state defendant, courts undertake a two-step analysis. *United Techs. Corp.*, 556 F.3d at 1274. First, a court must determine whether the exercise of jurisdiction is appropriate under the state long-arm statute. *Future Tech. Today*, 218 F.3d at 1249; *see also Stubbs v. Wyndham Nassau Resort & Crystal Palace Casino*, 447 F.3d 1357, 1361 (11th Cir. 2006). Georgia's long-arm statute, O.C.G.A. § 9-10-91, provides six avenues for courts to exercise jurisdiction over nonresidents, two of which are relevant for purposes of this Order.

"A court of this state may exercise personal jurisdiction over any nonresident . . . as to a cause of action arising from any of the acts . . . enumerated in this Code section" if the defendant "[t]ransacts any business within this state." O.C.G.A. § 9-10-

91(1). A court could also exercise personal jurisdiction if the defendant "[c]ommits a tortious injury in this state caused by an act or omission outside this state *if* the tortfeasor regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state." O.C.G.A. § 9-10-91(3).

But the story doesn't end there. Even if the state long-arm statute is satisfied, courts must then consider "whether the exercise of jurisdiction over the defendant would violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution." *Melgarejo v. Pycsa Panama, S.A.*, 537 F. App'x 852, 858–59 (11th Cir. 2013). Under the federal standard, "due process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. State of Wash., Off. of Unemployment Comp. & Placement*, 326 U.S. 310, 316 (1945) (internal quotations omitted). In other words, and for all intents and purposes here, (1) the plaintiff must do something to target the forum state or its residents, and (2) the exercise of jurisdiction must be fair. *Licciardello v. Lovelady*, 544 F.3d 1280 (11th Cir. 2008) (citing *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774 (1983)).

"District courts in Georgia should take care not to conflate these two inquires

because Georgia's long-arm statute does not provide jurisdiction that is coextensive with due process." *Empirical Regent, LLC v. Sunny Design & Bus. Consulting, LLC*, No. 1:19-CV-3253-MHC, 2020 WL 4557564, at *4 (N.D. Ga. Feb. 25, 2020) (citing *Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.*, 593 F.3d 1249, 1259 (11th Cir. 2010)). In other words, these are two separate inquiries—both of which must be met to establish personal jurisdiction. *Id*.

## DISCUSSION

A Rule 12(b)(2) motion to dismiss attacks the district court's ability to assert jurisdiction over the defendant's person. Fed. R. Civ. P. 12(b)(2). It is essential for the Court to make this determination before it can do anything in this case. *Posner v. Essex Ins. Co.*, 178 F.3d 1209, 1214 n. 6 (11th Cir.1999) ("A court without personal jurisdiction is powerless to take further action."). After careful consideration, the Court determines that Plaintiff has failed to meet its burden to establish jurisdiction over Defendant GameMasters under Georgia's long-arm statute. Accordingly, the Court **GRANTS** GameMasters's Motion to Dismiss [Doc. 87] and **DISMISSES** the claims against it **without prejudice.**

1. **Georgia's Long-Arm Statute**

Again, Georgia's long-arm statute reaches only those nonresidents whose conduct brings them under at least one of the six prongs of O.C.G.A. § 9-10-91. *Diamond Crystal*, 593 F.3d at 1259. Plaintiff contends that jurisdiction is proper over

7

GameMasters because it (1) transacted business in Georgia and (2) committed a tortious injury in Georgia caused by an act outside Georgia *and* regularly does or solicits business in Georgia. [Doc. 89, pp. 9, 11]. The Court disagrees.

### A. O.C.G.A. § 9-10-91(1)

The first prong of the Georgia long-arm statute provides that a court in Georgia may exercise jurisdiction over a defendant if the defendant "transacts any business within this state." O.C.G.A. § 9-10-91(1). The Eleventh Circuit has instructed that courts ought to interpret this requirement "literally." *Diamond Crystal*, 593 F.3d at 1259. Accordingly, "subsection (1) long-arm jurisdiction in Georgia expressly depends on the actual transaction of business—the doing of some act or consummation of some transaction—by the defendant in the state." *Id*. Georgia courts apply a three-part test to determine if jurisdiction is proper over a nonresident based on the transaction of business:

> Jurisdiction exists on the basis of transacting business in this state if [1] the nonresident defendant has purposefully done some act or consummated some transaction in this state, [2] if the cause of action arises from or is connected with such act or transaction, and [3] if the exercise of jurisdiction by the courts of this state does not offend traditional fairness and substantial justice.

*Robertson v. CRI, Inc.*, 601 S.E.2d 163, 166 (Ga. Ct. App. 2004). Plaintiff fails to articulate this well-established three-part test in its single Response to the two 12(b)(2) motions to dismiss. *See* [Doc. 89, pp. 9–11]. Although Plaintiff vaguely pleads

that its "causes of action arise directly from Defendants' business contacts and other activities in the State of Georgia[,]" Plaintiff fails to substantiate the allegations as to GameMasters when challenged. *See* [Doc. 78, ¶ 49]. Although Plaintiff does submit screenshots of GameMasters's website showing that it "buys products from and sells products for a host of Georgia-based firearm and ammunition companies," the screenshots do not help Plaintiff establish that GameMasters's relationship with these companies—if any—is *related to the cause of action*, i.e., the alleged trademark infringement. *See* [*id*. at pp. 5–6, ¶ 6]. Therefore, Plaintiff fails to meet its burden to substantiate its jurisdictional allegations under § 9-10-91(1) as to GameMasters. *See Polski Linie Oceaniczne v. Seasafe Transp. A/S*, 795 F.2d 968, 972 (11th Cir. 1986).

### B. O.C.G.A. § 9-10-91(3)

Georgia's long-arm statute also allows for a court to exercise personal jurisdiction over a nonresident defendant who "[c]ommits a tortious injury in this state caused by an act or omission outside this state *if* the tort-feasor regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state." O.C.G.A. § 9-10-91(3) (emphasis added). Plaintiff asserts that the relevant act outside of Georgia is GameMasters's use of Plaintiff's Quik-Shok® trademark on the CCI Product that GameMasters was selling on its website. *See* [Doc. 89, pp. 11–12]. The harm, according to Plaintiff, occurred in its home state of Georgia and thus, there is a

9

tortious injury caused by an act outside the state. *See* [*id*. at p. 12]; O.C.G.A. § 9-10-91(3). However, even granting Plaintiff that first prong, Plaintiff fails to meet its burden to establish that GameMasters derives substantial revenue from or conducts regular business in Georgia. *See* [*id*. at p. 12.].

       *i.*      *Tortious Injury in the State*

Citing to various tort cases (but no trademark cases) from the Georgia Court of Appeals, the Northern District of Georgia determined that for purposes of the Georgia long-arm statute, the relevant harm is the likelihood of confusion among consumers—not the Plaintiff's economic loss in the forum.[6] *Empirical Regent*, 2020 WL 4557564, at *8. In other words, according to the Northern District, Plaintiff's Amended Complaint would need to adequately plead that the Group 2 and 3 Defendants' use of Plaintiff's trademark was likely to confuse *Georgia* consumers. *See id*.

Although Plaintiff's Amended Complaint—in conclusive fashion—asserts that "Defendants have committed torts in or directed at entities within Georgia," it asserts no factual allegations about confusion among Georgia consumers in particular.[7] *See*

---

[6] This seems to be in contrast to the Eleventh Circuit's interpretation of the federal standard, in which the harm in a trademark case (for purposes of the Due Process Clause) occurs to the trademark holder in the trademark holder's place of residence. *See Licciardello v. Lovelady*, 544 F.3d 1280, 1287 (11th Cir. 2008) (holding that a nonresident's intentional use of a resident's trademark was "expressly aimed at a specific individual in the forum whose effects were suffered in the forum," satisfying the minimum contacts prong of the federal standard).

[7] Plaintiff does assert that the use of its trademark is "likely to cause confusion," but there is no allegation about confusion among Georgia consumers in particular. *See* [Doc. 1, ¶ 87].

[Doc. 78, ¶ 49]. And then, after GameMasters filed its Motion to Dismiss, Plaintiff did not submit any evidence of consumer confusion in Georgia or any sales of the allegedly infringing Product to Georgia residents. *See generally* [Doc. 89]. Granted, unlike in its Response to Defendant SafeSide's Motion to Dismiss, Plaintiff did attach an exhibit purportedly showing GameMasters's business ties with Georgia companies. *See* [Doc. 89-12]; *see generally* [Doc. 12]. However, the exhibit does not demonstrate anything related to the Product at issue or confusion among Georgia consumers. *See* [Doc. 89-12].

That said, in all fairness to Plaintiff, and as the Court noted in its previous order granting Defendant SafeSide's Motion to Dismiss, the Court is not fully convinced that the Georgia Court of Appeals case that the Northern District relied upon—which involved a situation in which a plaintiff received a medical injury in another state but sought medical treatment (and therefore suffered economic loss) in Georgia—equally applies to trademark cases.[8] *See Gee v. Reingold*, 259 Ga. App. 894, 897 (2003)); [Doc. 88, p. 13]. Certainly, the Court agrees that "[a] tort occurs when and where the actual injury or accident takes place, and not at the place of the economic consequences of that injury." *Gee*, 259 Ga. App. at 897. But the harm in a trademark

---

[8] Although GameMasters acknowledged that the Court previously stated that Plaintiff had not adequately pled confusion among Georgia consumers in its order granting Defendant SafeSide's Motion to Dismiss, it did not address the Court's other observation that the Northern District might have been mistaken in relying on non-trademark cases from the Georgia Court of Appeals. *See* [Doc. 95, p. 5]; *Polywad, Inc. v. Able's Sporting, Inc.*, No. 5:23-CV-00512-TES, 2024 WL 1744068, at *6 (M.D. Ga. Apr. 23, 2024).

11

case is different: The harm a trademark holder suffers in his home state is not the same as a plaintiff suffering harm in one state but bringing the lingering consequences of the injury to the forum state, as in a medical injury case.

The Court thinks it plausible that a Georgia-resident plaintiff suffering harm to his brand in Georgia constitutes "a tortious injury in this state caused by an act or omission outside this state." *See* O.C.G.A. § 9-10-91(3). However, the Court doesn't have to untangle that particular issue today because Plaintiff must not only allege a tortious injury caused by an act outside Georgia; it must also adequately plead that GameMasters regularly does business in, engages in a persistent course of conduct in, or derives substantial revenue from Georgia. *See id*. And that, Plaintiff has failed to do.

> ii.   *Regularly Conducts Business, Engages in Persistent Conduct, or Derives Substantial Revenue in Georgia*

Plaintiff's Amended Complaint contains very few factual allegations to support the second prong—the only relevant allegations being that "*Defendants* have and continue to supply their products and services to customers and partners in Georgia" and "regularly conduct business" in Georgia.[9] [Doc. 78, ¶¶ 49–50 (emphasis

---

[9] Plaintiff could likewise be trying to assert jurisdiction on the basis that the websites displaying the Quik-Shok mark on the CCI Product were accessible to Georgia residents. [Doc. 78, ¶ 60]. However, even if Plaintiff had adequately pled this basis, operating a website that is merely accessible to residents of the forum state is not sufficient as a basis for jurisdiction under § 9-10-91(3). *Jordan Outdoor Enterprises, Ltd. v. That 70's Store, LLC*, 819 F. Supp. 2d 1338, 1343 (M.D. Ga. 2011).

added)]. First, Plaintiff's Amended Complaint says nothing at all about GameMasters receiving revenue from Georgia residents, let alone "substantial revenue." *See generally* [Doc. 78]. Moreover, unlike the Group 2 Defendants, who admitted to deriving some revenue from Georgia, GameMasters testified that it has never sold *any* product to a Georgia resident or business. [Doc. 87-2, ¶ 3]. As it has offered no evidence to the contrary, Plaintiff has not met its burden in establishing jurisdiction over GameMasters under the "substantial revenue" prong of § 9-10-91(3). *See Montoya v. Samsung SDI Co.*, No. 4:22-CV-6, 2022 WL 18776009, at *10 (S.D. Ga. Dec. 28, 2022) (granting a motion to dismiss where the plaintiff failed to demonstrate that the defendant derived any revenue from Georgia).

On top of trying to proceed under the "substantial revenue" prong of § 9-10-91(3), however, Plaintiff also attempts to go the "regularly conducts business" route. [Doc. 89, p. 12]. Although Plaintiff's allegation that Defendants "regularly conduct business" in Georgia is conclusory, Plaintiff's allegation that "Defendants have and continue to supply their products and services to customers and partners in Georgia" is an initial factual allegation that—if supported by additional and more-detailed facts once challenged by Defendant—could eventually support jurisdiction under the "regularly conducts business" prong of § 9-10-91(3). *See* [Doc. 78, ¶¶ 49–50]. To be sure, the Court thinks that this single factual allegation is a little flimsy, as Plaintiff lobs the same accusation at all 20 Defendants without distinguishing between any of

their individual actions—something courts usually do not like when plaintiffs are alleging facts supporting their substantive claims. *See Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1323 (11th Cir. 2015) (warning against "asserting multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions"). Nevertheless, despite Plaintiff's grouping of Defendants, the Court construes the statement as a factual allegation as to jurisdiction and accepts it as true. *See Consol. Dev. Corp.*, 216 F.3d at 1291; *Meier*, 288 F.3d at 1269. Even so, however, Plaintiff fails to meet its burden of establishing jurisdiction under this prong once GameMasters challenged it.

Plaintiff's exhibit attempting to establish GameMasters's ties to Georgia establishes nothing of note. *See* [Doc. 89-12]. As GameMasters points out in its Reply, at most, the screenshotted website shows that GameMasters sells products manufactured in Georgia; it does not show that GameMasters has any contact—let alone a business relationship—with those manufacturing companies.[10] *See* [*id.*]; [Doc. 95, p. 6]. Therefore, having failed to carry its burden in demonstrating that

---

[10] Plaintiff also attached screenshots from the website of AmChar Wholesale, Inc. ("AmChar"), a non-party that Plaintiff paints as a "Georgia-based company." *See* [Doc. 89-8]; [Doc. 89, ¶ 6]. Although GameMasters does not describe itself as a direct dealer for AmChar, AmChar's website lists GameMasters as one of its dealers. [Doc. 89-8, p. 3]. However, although AmChar is registered as a "foreign profit corporation" in Georgia and describes itself as having a "secondary warehouse and distribution center in McDonough, Georgia," it would be a stretch to say that GameMasters "regularly conducts business" in Georgia because it contracts with a company that has a registered agent and a warehouse site in Georgia. *See* [Doc. 89-9]; [Doc. 89-10]. Moreover, there is no evidence that the products GameMasters sells come from AmChar's Georgia warehouse. *See* [Doc. 89-9]; [Doc. 89-10].

14

GameMasters derives substantial revenue from Georgia consumers or engages in regular business with Georgia companies, Plaintiff has not established personal jurisdiction over GameMasters under Georgia's long-arm statute.

### 2. Federal Due Process

As stated above, Georgia's long-arm statute is not coextensive with the federal standard. *Empirical Regent*, 2020 WL 4557564, at *4. In other words, Georgia does not permit the exercise of personal jurisdiction over non-Georgia residents to the full extent permitted by the United States Constitution. *See id*. Thus, although it is possible that the Due Process Clause doesn't prohibit jurisdiction over GameMasters,[11] Georgia law does. Had Plaintiff established jurisdiction under Georgia's long-arm statute, the Court would be obligated to conduct an independent, second analysis of the propriety of jurisdiction under the federal Due Process Clause. *See id*. However, because the Court found that Georgia's long-arm statute does not permit the exercise of personal jurisdiction over GameMasters, the Court sees no

---

[11] The Eleventh Circuit has held that for purposes of the Due Process Clause, a nonresident defendant's *intentional* use of the plaintiff's trademark constituted targeting of an individual in the forum state—thus satisfying the "minimum contacts" prong of the federal standard, as well as the fairness factors. *Lovelady*, 544 F.3d at 1284; *see Calder v. Jones*, 465 U.S. 783, 784 (1984) (affirming California's exercise of jurisdiction over nonresident defendants who published a libelous article about a California resident on the basis that she experienced the "brunt of the harm" in California); *see also Keeton*, 465 U.S. at 776–77 (affirming the exercise of jurisdiction over a nonresident defendant magazine who published a libelous magazine in the forum). In other words, Eleventh Circuit precedent seems to indicate that jurisdiction may be under the federal standard if a defendant's use of a trademark was intentional. *See Lovelady*, 544 F.3d at 1284. Plaintiff's Amended Complaint alleges intentional use, and GameMasters's affidavit attached to its Motion to Dismiss does not refute Plaintiff's contention. *See* [Doc. 78, ¶¶ 91, 104, 113]. Therefore, at least looking at Plaintiff's pleading alone, it seems jurisdiction would likely have been proper under the federal standard.

need to engage in a lengthy analysis on the federal standard for GameMasters.

### 3. Jurisdictional Discovery

It seems to the Court that Plaintiff is fishing for any basis for jurisdiction over a company that makes a concerted effort to run a regional business nowhere near the state of Georgia. *See Lowery v. Ala. Power Co.*, 483 F.3d 1184, 1216 (11th Cir. 2007) (denying a defendant's request for jurisdictional discovery as to the court's subject-matter jurisdiction as a "fishing expedition[]" where the defendant failed to carry its burden in establishing jurisdiction and where the defendant was the one who chose to remove the action to federal court in the first place).

GameMasters has established, through unrebutted evidence, that it derives zero revenue from sales to Georgia residents or businesses, and Plaintiff has not carried its burden in showing that GameMasters has a regular business relationship with any of the Georgia manufacturers or wholesalers. *See* [Doc. 87-2, ¶ 3]. Finally, Plaintiff's request for jurisdictional discovery is extremely broad, requesting that it be able to "explore these facts, including the nature, duration and frequency of the PJ Defendants' contacts with Georgia." [Doc. 89, p. 18]. "The purpose of jurisdictional discovery is to ascertain the truth of the allegations or facts underlying the assertion of personal jurisdiction. It is not a vehicle for a fishing expedition in hopes that discovery will sustain the exercise of personal jurisdiction." *Atlantis Hydroponics, Inc. v. Int'l Growers Supply, Inc.*, 915 F. Supp. 2d 1365, 1380 (N.D. Ga. 2013) (cleaned up).

Thus, jurisdictional discovery as to GameMasters is not warranted, and the Court **DENIES** Plaintiff's request for it. [Doc. 89, p. 17].

## CONCLUSION

Accordingly, because Plaintiff has failed to meet its burden in establishing a basis for exercising personal jurisdiction over Defendant GameMasters, the Court **GRANTS** GameMasters's Motion to Dismiss [Doc. 87] and **DISMISSES** Plaintiff's claims against it **without prejudice** pursuant to Rule 12(b)(2). Accordingly, the Court directs the Clerk to **TERMINATE** GameMasters as a party to this action. Plaintiff's request for jurisdictional discovery as to GameMasters is **DENIED**. [Doc. 89, p. 17].

**SO ORDERED**, this 21st day of June, 2024.

S/ Tilman E. Self, III
**TILMAN E. SELF, III, JUDGE**
**UNITED STATES DISTRICT COURT**