# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF GEORGIA
# MACON DIVISION

|  |  |
|---|---|
| **POLYWAD, INC.,**<br><br>*Plaintiff,*<br><br>v.<br><br>**ABLE'S SPORTING, INC.,** *et al.,*<br><br>*Defendants.* | **CIVIL ACTION NO.**<br>**5:23-cv-00512-TES** |

### ORDER DENYING IN PART AND GRANTING IN PART
### GROUP 1 DEFENDANTS' MOTION TO DISMISS

Plaintiff Polywad, Inc. ("Polywad") filed suit against 20 Defendants, asserting various federal and state-law causes of action surrounding allegedly infringing uses of its trademark. [Doc. 78].[1] Now, Defendants Florida Gun Exchange, Inc. d/b/a Gunbuyer ("Gunbuyer"), Midway Arms, Inc. ("Midway Arms"), Delmic Enterprise LLC d/b/a Target Sports USA ("Target Sports"), and Sportsman's Guide LLC ("Guide") (collectively, "Group 1 Defendants") move to dismiss Plaintiff's Amended

---

[1] Specifically, Plaintiff alleges trademark infringement under 15 U.S.C. § 1114 (Count I); false designation of origin under 15 U.S.C. § 1125(a) (Count II); trademark dilution under 15 U.S.C. § 1125(c) (Count III); and violations of Georgia's Fair Business Practices Act (Count IV) and Uniform Deceptive Trade Practices Act (Count V).

Complaint[2] pursuant to Federal Rule of Civil Procedure 12(b)(6). [Doc. 85-1, p. 2]. Former Group 2 Defendant Arnzen Arms LLC ("Arnzen") also joins in Group 1's 12(b)(6) Motion.[3] [Doc. 86-1, p. 2].

For the following reasons, the Court **DENIES in part** Movants' Motion to Dismiss [Doc. 85], finding that, based on the face of the Amended Complaint, Plaintiff's claims are not time-barred. *See* [Doc. 85-1, p. 7]. That said, the Court **GRANTS in part** their Motion [Doc. 85] as to Count III, finding that Plaintiff fails to state a claim for trademark dilution under 15 U.S.C. § 1125(c). *See* [Doc. 85-1, p. 15]. Accordingly, the Court **DISMISSES** Plaintiff's trademark dilution claim against the Movants **with prejudice**. Plaintiff's remaining claims will proceed for further factual development.

## BACKGROUND

Plaintiff Polywad is a Georgia corporation that designs ammunition and consults with ammunition manufacturing companies. [Doc. 78, ¶¶ 4, 52]. Run by its sole employee, Jay Menefee, Polywad has sold and marketed products bearing its federally registered trademark, "Quik-Shok," since 1997. [*Id*. at ¶¶ 52–54]. Since then,

---

[2] Plaintiff filed its Original Complaint [Doc. 1] on December 22, 2023, but on April 5, 2024, Plaintiff filed its Amended Complaint [Doc. 78], the operative pleading for purposes of this Order. *See* [Doc. 81].

[3] All of the Group 2 Defendants, including Arnzen, joined in Group 1's Rule 12(b)(6) Motion in the alternative to their own Motion to Dismiss [Doc. 86] for lack of personal jurisdiction. *See* [Doc. 86-1, p. 2]. However, the Court previously granted Group 2's Motion in part, dismissing all Group 2 Defendants except for Arnzen. [Doc. 108, p. 2]. For purposes of this Order, the Court will refer to the Group 1 Defendants and Arnzen together as "Movants."

Polywad has been investing significant time and money into promoting its brand and building consumer goodwill (although it did not receive its trademark registration until 1999). [*Id*. at ¶¶ 54, 56–57]. In 2001, Plaintiff entered into an agreement ("CCI Agreement") with Cascade Cartridge, Inc. ("CCI"), a non-party, allowing CCI to sell a product using Plaintiff's mark ("CCI Product" or the "Product"). [Doc. 78-2, p. 2]. Plaintiff and CCI, however, terminated their agreement in 2007—thus leaving CCI with no contractual right to use the "Quik-Shok" mark. [*Id*.].

Unbeknownst to Plaintiff, the Defendants—who were in the business of selling hunting and/or shooting supplies—offered the CCI Product for sale on their websites using a picture of the Product with the old packaging containing the "Quik-Shok" mark. *See* [Doc. 78, ¶¶ 60–81]. To be sure, Plaintiff does not allege that any Defendant actually sold any physical CCI Product bearing the mark. *See generally* [*id*.]. Instead, Plaintiff alleges that they displayed the old packaging on their websites where they offered the CCI Product for sale. *See* [*id*. at ¶¶ 62–81].

Polywad alleges that Menefee diligently protected the mark and would, for example, "regularly check retail shops which sold ammunition for any infringing products." [*Id*. at ¶ 82]. Yet, Plaintiff had no idea about the Defendants' allegedly infringing use. *See* [*id*. at ¶¶ 82–83]. This is because, Plaintiff alleges, its sole owner, Menefee, is in his seventies and "is not particularly 'computer-savvy.'" [*Id*. at ¶ 83]. Not until early June 2023 did Menefee search the internet for the "Quik-Shok" mark

3

and discover Defendants' use. [*Id.*]. Shortly after the discovery, Plaintiff sent cease-and-desist letters to each Defendant.[4] [*Id.* at ¶ 84]; [Doc. 78-2].

Plaintiff additionally alleges that "Defendants' use of the intellectual property owned by Plaintiff as described above is a deliberate, intentional, and willful attempt to cause confusion, to cause mistake, and to deceive purchasers." [Doc. 78, ¶¶ 91, 104, 113]. To support its assertion of willfulness, Plaintiff further alleges that "Defendants' deliberate, intentional, willful, and/or willfully blind use of Plaintiff's intellectual property as described above is evidenced by the fact that, apparently, Defendants' have used Plaintiff's intellectual property for many years without inquiring as to whether they had any right to do so." [*Id.* at ¶¶ 92, 105, 114].

---

[4] The Movants argue in their Motion to Dismiss that "Group 1 Defendants removed the alleged infringing advertisements from their websites after receiving cease-and-desist letters in June 2023." [Doc. 85-1, p. 19]. In an attempt to support their contention, the Movants cite to two paragraphs of the Amended Complaint, Paragraphs 62 and 96. *See* [*id.*]. Paragraph 62 states that non-movant Defendant Able's Sporting, Inc. "advertises and/or has advertised the sale of a product it describes as 'CCI Quik-Shok Varmint Rimfire Ammunition 0064, 22 Long Rifle, Hollow Point (HP), 32GR, 1540 fps, 50,'" and then provides a picture of the packaging with the "Quik-Shok" mark on the box. *See* [Doc. 78, ¶ 62]. Paragraph 69 says something similar with regard to Group 1 Defendant GunBuyer, stating: "GunBuyer, Inc. advertises and/or has advertised the sale of a product it describes as 'CCI 22 LR Subsonic Quik Shok Segmented 40 Grain JHP 50 Round Box CCI0074.'" [*Id.* at ¶ 69]. However, the picture Plaintiff included of the packaging on GunBuyer's website does not include the "Quik-Shok" mark. *See* [*id.*].

From these two photos in Plaintiff's Amended Complaint, it seems that the Movants are asking the Court to infer that Defendant GunBuyer (and perhaps the other Movants too) no longer use the "Quik-Shok" mark on its website. *See* [Doc. 85-1, p. 19]. But to make such an assumption would be to make an inference in favor of Defendants—and that, the Court cannot do. *See Randall v. Scott*, 610 F.3d 701, 705 (11th Cir. 2010) (explaining that when ruling on a motion to dismiss, courts "accept as true the facts as set forth in the complaint and draw all reasonable inferences in the plaintiff's favor"). Because the Movants cite nothing to show that they have ceased using the trademark—let alone *when* they ceased using the trademark—the Court cannot consider the Movants' assertion when ruling on this Motion. *See id.*

## **LEGAL STANDARD**

When ruling on a Rule 12(b)(6) motion to dismiss for failure to state a claim, it is a cardinal rule that district courts must accept the factual allegations set forth in a complaint as true. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 572 (2007). In accepting the factual allegations as true, courts are to construe the reasonable inferences from them in the light most favorable to the plaintiff. *Hawthorne v. Mac Adjustment, Inc.*, 140 F.3d 1367, 1370 (11th Cir. 1998). As with substantive claims, "a Rule 12(b)(6) dismissal on statute of limitations grounds is appropriate only if it is 'apparent from the face of the complaint' that the claim is time-barred." *Lindley v. City of Birmingham*, 515 F. App'x 813, 815 (11th Cir. 2013).

However, through Rule 12(b)(6), a defendant may "test the facial sufficiency" of a complaint by way of a motion to dismiss. *Ghee v. Comcast Cable Commc'ns, LLC*, No. 22-12867, 2023 WL 3813503, at *2 (11th Cir. June 5, 2023) (quoting *Brooks v. Blue Cross & Blue Shield*, 116 F.3d 1364, 1368 (11th Cir. 1997)). Such a "motion is an 'assertion by a defendant that, even if the facts alleged by a plaintiff are true, the complaint still fails as a matter of law to state a claim upon which relief may be granted.'" *Barreth v. Reyes 1, Inc.*, No. 5:19-cv-00320-TES, 2020 WL 4370137, at *2 (M.D. Ga. July 29, 2020) (citation omitted). A complaint survives a Rule 12(b)(6)-based motion only if it alleges sufficient factual matter (accepted as true) that states a claim for relief that is plausible on its face. *McCullough*, 907 F.3d at 1333 (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009)).

Now, whether a complaint states a claim for relief is measured by reference to the pleading standard of Federal Rule of Civil Procedure 8—a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *Barreth*, 2020 WL 4370137, at *2 (citation omitted). Rule 8 doesn't require detailed factual allegations, but it does require "more than unadorned, the-defendant-unlawfully-harmed-me accusations." *McCullough*, 907 F.3d at 1333 (citation omitted) (alterations adopted). Its sole purpose is to provide a defendant "with 'fair notice' of the claims and the 'grounds' for entitlement to relief." *Barreth*, 2020 WL 4370137, at *2 (citation omitted); *Twombly*, 550 U.S. at 555–56.

Courts use a two-step framework to decide whether a complaint survives a motion to dismiss. *McCullough*, 907 F.3d at 1333 (citation omitted). The first step is to identify the allegations that are "no more than conclusions." *Id.* (quoting *Iqbal*, 556 U.S. at 679). "Conclusory allegations are not entitled to the assumption of truth." *Id.* After disregarding the conclusory allegations, the second step is to "assume any remaining factual allegations are true and determine whether those factual allegations 'plausibly give rise to an entitlement to relief.'" *Id.* "A court decides whether [Rule 8's pleading standard] is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer that [a] plaintiff is entitled to the legal remedy sought." *Barreth*, 2020 WL 4370137, at *2 (citation omitted).

When drafting a complaint, "[a] plaintiff must plead more than labels and conclusions or a formulaic recitation of the elements of a cause of action." *McCullough*, 907 F.3d at 1333 (quoting *Twombly*, 550 U.S. at 555). A plaintiff may use legal conclusions to structure a complaint, but they "must be supported by factual allegations." *McCullough*, 907 F.3d at 1333 (quoting *Iqbal*, 556 U.S. at 679). While courts, in ruling on a motion to dismiss, must take all of the factual allegations in a complaint as true, they are not bound to accept a legal conclusion couched as a factual allegation. *Iqbal*, 556 U.S. at 678. Courts must "identify conclusory allegations and then discard them—not 'on the ground that they are unrealistic or nonsensical' but because their conclusory nature 'disentitles them to the presumption of truth.'" *McCullough*, 907 F.3d at 1333 (quoting *Iqbal*, 556 U.S. at 681).

The issue to be decided when considering a motion to dismiss "is necessarily a limited one." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974) *overruled on other grounds by Davis v. Scheuer*, 468 U.S. 183 (1984). The issue is not whether the claimant will ultimately prevail, but "whether the claimant is entitled to offer evidence to support the claims." *Id.* The factual allegations in a complaint "must be enough to raise a right to relief above the speculative level" and cannot "merely create[] a suspicion of a legally cognizable right of action." *Twombly*, 550 U.S. at 555. Finally, and in this case, critically, a complaint that tenders "'naked assertions' devoid of 'further factual enhancement'" will not survive against a motion to dismiss. *Iqbal*, 556 U.S. at 678

7

(quoting *Twombly*, 550 U.S. at 557) (cleaned up). To survive, a complaint must allege enough facts "to raise a reasonable expectation that discovery will reveal evidence" supporting a claim. *Twombly*, 550 U.S. at 556.

## DISCUSSION

The Movants argue that the Court should dismiss Plaintiff's Amended Complaint for several reasons. First, they argue that the respective statutes' limitations periods bar Plaintiff's claims under the Georgia's Fair Business Practices Act ("FBPA") and Uniform Deceptive Trade Practices Act ("UDTPA") and that the doctrine of laches bars Plaintiff's federal Lanham Act claims. [Doc. 85-1, pp. 4, 10–13]. Next, they argue that the Court should additionally dismiss Plaintiff's trademark dilution claim (Count III) because Plaintiff's Amended Complaint fails to state a claim for relief. [*Id*. at p. 15]. For the following reasons, the Court agrees that Plaintiff fails to state a claim for trademark dilution under 15 U.S.C. § 1125(c) but disagrees with the Movants' contention that all of Plaintiff's claims are time-barred.

1. **Timeliness**

   A.  State Law Claims (Counts IV and V)

First, the Movants argue that relevant statutes of limitations bar Plaintiff's two claims under Georgia law. Specifically, they contend that the FBPA's two-year statute of limitations bars Plaintiff's claim against them in Count IV. [Doc. 85-1, pp. 7–9]. The FBPA states that "[n]o private right of action shall be brought . . . [m]ore than two

years after the person bringing the action knew or should have known of the occurrence of the alleged violation." O.C.G.A. § 10-1-401(a). Likewise, the Movants argue that the applicable four-year statute of limitations bars Plaintiff's claim under the UDTPA (Count V).[5] [Doc. 85-1, p. 9–10]. Essentially, according to the Movants, because Plaintiff's agreement with CCI (a non-party) expired in 2007, that was the date in which CCI could no longer legally use Plaintiff's "Quik-Shok" trademark. *See* [*id*. at p. 8]. Hence, according to the Movants, Plaintiff should have known of their use of the mark in 2007—much longer ago than two to four years—and thus, could have and should have brought the suit way back then. *See* [*id*.].

   The Movants are correct to point out that, ordinarily, "[t]he statute of limitations begins to run on a cause of action on the date that suit on the claim can first be successfully maintained." *Chambers v. Green*, 539 S.E.2d 181, 182 (Ga. Ct. App. 2000) (quoting *Limoli v. First Georgia Bank*, 250 S.E.2d 155, 156 (Ga. Ct. App. 1978)); *see* [Doc. 85-1, pp. 9–10 (quoting *Amin v. Mercedes-Benz USA, LLC*, 301 F. Supp. 3d 1277, 1291 (N.D. Ga. 2018))]. However, as Plaintiff points out, the Movants omit that dismissal under a statute of limitations is appropriate "only if it is apparent from the face of the complaint that the claim is time-barred because '[a] statute of limitations bar is an affirmative defense, and . . . plaintiff[s] [are] not required to negate an

---

[5] The four-year statute of limitations for "injuries to personalty" found in O.C.G.A. § 9-3-31 applies to UDTPA claims. *Kason Indus., Inc. v. Component Hardware Grp., Inc.*, 120 F.3d 1199, 1205 (11th Cir. 1997).

9

affirmative defense in [their] complaint.'" *Lindley*, 515 F. App'x at 815 (quoting *La Grasta v. First Union Sec., Inc.*, 358 F.3d 840 (11th Cir. 2004), *abrogated on other grounds by Twombly*, 550 U.S. 544); *see also Isaiah v. JPMorgan Chase Bank*, 960 F.3d 1296, 1304 (11th Cir. 2020) ("A complaint need not anticipate and negate affirmative defenses and should not ordinarily be dismissed based on an affirmative defense unless the defense is apparent on the face of the complaint.").

From the face of Plaintiff's Amended Complaint, it is unclear when Plaintiff should have known of Defendants' alleged infringement. Assuming all of Plaintiff's factual allegations are true, the Court only knows that Plaintiff first learned of the alleged infringement in June 2023 upon Menefee's first internet search. [Doc. 78, ¶ 83]. The Movants would have the Court deduce that because the CCI Agreement terminated in 2007, Plaintiff ought to have known about the Movants' allegedly infringing use then. But that requires inferring that all of the Movant companies have been using the mark since then. In other words, it requires making an inference in Defendants' favor—the opposite of what this Court is permitted to do on a motion to dismiss. *See Hawthorne*, 140 F.3d at 1370.

Moreover, as Plaintiff points out (by referencing exhibits attached to its Response brief), several of the Defendants—including Group 1 Defendant Sportsman's Guide—did not even exist in 2007. *See* [Doc. 90-2]; [Doc. 90-3]; [Doc. 90-4]; [Doc. 90-5]. Granted, Plaintiff's exhibits do not prove that it could not have known

10

about the infringement within the applicable limitations periods. But Plaintiff does not have to prove that. Plaintiff's exhibits merely demonstrate a fatal flaw in the Movants' reasoning: If even one of the Movant companies did not even exist at the time the CCI Agreement was terminated 16 years ago, then obviously not all of the Movants began using the mark 16 years ago. Therefore, 16 years ago is not the correct date to judge when Plaintiff should have known of all of the Movants' allegedly infringing use.

Disposing of the 2007 date, the only date the Court can go on is the one apparent from the face of Plaintiff's Amended Complaint: June 2023, when Menefee first searched the internet. *See* [Doc. 78, ¶ 83]. That said, as the case progresses and more evidence comes to light, it may become clear that Plaintiff should have known about a particular Defendant's use of the mark much earlier so that the applicable statute of limitations bars that claim against that Defendant.[6] But the Amended Complaint just doesn't allow the Court to make that call at this procedural point. *See Hawthorne*, 140 F.3d at 1370.

### B. Lanham Act Claims (Counts I through III)

The same logic applies to the Movants' timeliness arguments under the

---

[6] The Movants correctly point out that as a general rule, "[m]ere ignorance of the facts constituting a cause of action does not prevent the running of the statute of limitations, for a plaintiff must exercise reasonable diligence to learn of the existence of a cause of action." *Limoli v. First Georgia Bank*, 250 S.E.2d 155, 156 (Ga. Ct. App. 1978) (citations omitted); *see* [Doc. 85-1, pp. 8–9].

11

Lanham Act. Although the Lanham Act does not contain a statute of limitations, "[t]he equitable defense of estoppel by laches may be applied to bar claims for trade dress or trademark infringement brought under the Lanham Act." *Kason Indus., Inc. v. Component Hardware Grp., Inc.*, 120 F.3d 1199, 1203 (11th Cir. 1997) (citing *Conagra, Inc. v. Singleton*, 743 F.3d 1508, 1517 (11th Cir. 1984)); *see Angel Flight of Ga., Inc. v. Angel Flight Am., Inc.*, 522 F.3d 1200, 1207 (11th Cir. 2008). As an affirmative defense, Defendants bear the burden of demonstrating: "(1) a delay in asserting a right or a claim; (2) that the delay was not excusable; and (3) that there was undue prejudice to the party against whom the claim is asserted."[7] *Kason*, 120 F.3d at 1203 (citing *AmBrit, Inc. v. Kraft, Inc.*, 812 F.2d 1531, 1545 (11th Cir. 1986)). Because laches is a fact-intensive affirmative defense, some courts consider it an "unsuitable basis for dismissal at the pleading stage." *See, e.g.*, *Pronman v. Styles*, No. 12–80674–CIV, 2013 WL 3894978, at *5 (S.D.Fla. July 26, 2013). As with statutes of limitations, only if a complaint shows on its face that laches bars relief is it subject to dismissal under Rule 12(b)(6).

A delay should be measured "from the time at which the plaintiff knows or should know she has a provable claim for infringement." *Kason*, 120 F.3d at 1206. As

---

[7] The Movants argue each of these elements: that Plaintiff filed suit "far too late," with no excuse, causing undue prejudice to Defendants. *See* [Doc. 85, pp. 11–15]. However, because—as the Court will explain—it is not apparent to the Court from the face of Plaintiff's Amended Complaint that Plaintiff filed suit "far too late," the Court need not reach any questions as to inexcusability or undue prejudice at this stage.

12

previously explained with regard to the statutes of limitations, it is not clear from the face of Plaintiff's Amended Complaint that Plaintiff should have known of each of the Defendants' use in 2007, and the Movants submitted no exhibits to support their contention. *See generally* [Doc. 78]; [Doc. 85]. All that is clear is that Plaintiff did know of the alleged infringement in June 2023, six months before filing suit in December 2023. [Doc. 78, ¶¶ 83–84]; *see* [Doc. 1]. Again, Plaintiff was not required to plead facts that negate Defendants' affirmative defenses. *See Isaiah*, 960 F.3d at 1304. Thus, the Court cannot say, at this preliminary stage, that the Movants have shown that the doctrine of laches bars Plaintiff's Lanham Act claims.

### 2. Failure to State a Claim for Trademark Dilution (Count III)

Lastly, the Movants argue that the Court should dismiss Plaintiff's trademark dilution claim under 15 U.S.C. § 1125(c) (Count III) for failure to state a claim, arguing that Plaintiff fails to plead that the "Quik-Shok" mark is "famous" as the statute requires. [Doc. 85-1, p. 15]; *see* Fed. R. Civ. P. 12(b)(6). In Response, Plaintiff does not argue that its mark falls within the definition of a "household name" ordinarily required for trademark dilution claims but instead argues that it is famous within a particular market segment. *See* [Doc. 90, pp. 16–17]. On this point, the Movants carry the day.

Under 15 U.S.C. § 1125(c), an owner of a famous mark is entitled to injunctive relief against any person using the mark, after the mark has become famous, in

13

commerce that is likely to cause "dilution by blurring or dilution by tarnishment of the famous mark," even in the absence of confusion, competition, or actual economic injury. *Miller v. Folger*, No. 1:16-CV-047 (LAG), 2019 WL 13159715, at *3 (M.D. Ga. Feb. 4, 2019). One of the key elements, therefore, requires establishing that the mark is famous. *See id.* (quoting *Syndicate Sales, Inc. v. Hampshire Paper Corp.*, 192 F.3d 633, 639 (7th Cir. 1999)). A mark is considered famous "if it is widely recognized by the general consuming public of the United States as a designation of source of the goods or services of the mark's owner." 15 U.S.C. § 1125(c)(2)(A).

Ordinarily, name recognition within a niche market is not sufficient for a mark to be "famous" within the meaning of § 1125(c); the mark must be recognized by the general public. *See Unique Sports Prod., Inc. v. Babolat VS*, 403 F. Supp. 2d 1229, 1244 (N.D. Ga. 2005) (explaining that the mark at issue was not "famous" merely because it was well-known within a niche market); *Epic Tech, LLC v. SpinX Games Ltd.*, No. 1:22-CV-02043-SCJ, 2023 WL 6371025, at *9 (N.D. Ga. Apr. 13, 2023) (same). However, it seems that some courts within the Eleventh Circuit have found niche-market fame sufficient where "the diluting use[] [is] directed narrowly at the same market segment." *Carnival Corp. v. SeaEscape Casino Cruises, Inc.*, 74 F. Supp. 2d 1261, 1270 (S.D. Fla. 1999). However, the Court does not think it necessary to wade into that debate too deeply because Plaintiff fails to adequately plead any kind of fame—household or niche.

14

Even if it were to become apparent upon further factual development that Plaintiff's mark is famous within a particular market segment or the general public, the Amended Complaint fails to adequately plead it. To support its contention that it adequately pled that the "Quik-Shok" mark is famous, Plaintiff cites to two allegations in its Amended Complaint: (1) "Polywad has used the Quik-Shok® mark continuously for almost thirty years in the United States" and (2) "Polywad has invested heavily in the promotion of its brands and product names and has developed substantial rights in its marks." [Doc. 90, p. 17 (citing [Doc. 78, ¶¶ 55–56])].

These assertions may support an ordinary trademark violation, but a dilution claim requires much more. To be famous, "a mark must have a degree of distinctiveness and strength beyond that needed to serve as a trademark . . . [it] must be truly prominent and renowned." *Carnival Corp. v. SeaEscape Casino Cruises, Inc.*, 74 F. Supp. 2d 1261, 1270 (S.D. Fla. 1999). Even assuming that the mark need only be "truly prominent and renowned" within a particular market segment, Plaintiff's two allegations alone (essentially, that it has spent lots of time and money to promote its brand) do not support this assertion. *See* [Doc. 78, ¶¶ 55–56]. Plaintiff therefore fails to state a claim under 15 U.S.C. § 1125(c).

## CONCLUSION

In sum, the Court **GRANTS in part** Movants' Motion to Dismiss as to Plaintiff's trademark dilution claim under 15 U.S.C. § 1125(c), finding that Plaintiff

15

failed to adequately plead the essential element of fame. However, the **Court DENIES in part** their Motion to Dismiss insofar as they argue Plaintiff's remaining claims are barred by either a statute of limitations or the doctrine of laches. Other than Plaintiff's trademark dilution claim under § 1125(c), the remainder of Plaintiff's claims will proceed for further factual development against the remaining Defendants. The Court will shortly issue a Rule 16/26 Order so that this case can proceed to the discovery phase.

      **SO ORDERED**, this 25th day of June, 2024.

                                            S/ Tilman E. Self, III
                                            **TILMAN E. SELF, III, JUDGE**
                                            **UNITED STATES DISTRICT COURT**